CONSOLIDATED DEVELOPMENT CORPORATION, a Delaware Corporation, Consolidated Cuban Oil and Gas Rights Corporation, a Florida Corporation, Plaintiffs-Appellants,

v.

SHERRITT, INC., a foreign corporation, a.k.a. Viridian Inc., Sherritt International, Inc., a foreign corporation, et al., Defendants-Appellees.

Nos. 97-5726, 97-5953.

United States Court of Appeals,

Eleventh Circuit.

July 5, 2000.

Appeals from the United States District Court for the Southern District of Florida. (No. 96-01820-CIV-DLG), Donald L. Graham, Judge.

Before EDMONDSON and BARKETT, Circuit Judges, and COHILL[*], District Judge.

COHILL, District Judge:

Plaintiffs-Appellants Consolidated Development Corporation and Consolidated Cuban Oil & Gas Rights Corporation (collectively "Consolidated"), are United States corporations whose Cuban subsidiaries formerly held oil concessions and leases to drill for oil in the Republic of Cuba. These concessions were expropriated by the Cuban government in 1959.[1] In 1996, Consolidated filed this action for damages against the Republic of Cuba, four Cuban corporations, and two Canadian corporations and their affiliates. Consolidated here appeals the district court's dismissal, under Fed.R.Civ.P. 12(b)(6), of its claims against the Canadian corporations and their affiliates, for failure to state a claim upon which relief could be granted

We may, of course, affirm the district court on any adequate grounds, including grounds other than those upon which the district court actually relied. *Parks v. City of Warner Robins,* 43 F.3d 609, 613 (11th Cir.1995). In addition, we are mindful of this court's own responsibility to ascertain jurisdiction in the first

---

[*]Honorable Maurice B. Cohill, Jr., U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

[1]Plaintiffs' claim that its property was expropriated by the Republic of Cuba was certified by the United States Foreign Claims Settlement Commission on June 30, 1971, by Decision No. CU-5979 on Claim No. CU-2535. R1-2 at ¶ 19.

instance. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990); *University of S. Ala. v. American Tobacco Co.,* 168 F.3d 405, 410 (11th Cir.1999). Furthermore, "[a]n appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review." *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct., 162, 165, 79 L.Ed. 338 (1934). We conclude that the district court lacked personal jurisdiction over the Canadian corporations and their affiliates, and we will affirm on jurisdictional grounds without reaching the substantive questions raised by this appeal.

Dr. Alberto Diaz Masvidal, president of both Consolidated corporations, appears *pro se* and appeals the denial of his motion for intervention and other relief. Given our conclusion that the district court lacked jurisdiction over any of the defendants, we will affirm the district court's denial of his motion to intervene.

I.

This appeal is from a decision dismissing appellants' claims, and thus we take our factual framework from the allegations made in the first amended complaint, to the extent that they remain uncontroverted by the defendants' affidavits and depositions. Appellants filed this action against two Canadian corporations and their affiliates: Viridian, Inc. (f/k/a Sherritt, Inc.), and Viridian's affiliate, Canada Northwestern Energy Ltd. ("CNW"); and Sherritt International Corporation ("Sherritt International"), and its affiliates, The Cobalt Refinery Co., Inc. ("Corefco"), International Cobalt Company, Inc. ("ICCI"), and Moa Nickel, S.A. ("Moa Nickel").[2]

Viridian, CNW, and Sherritt International are organized under Canadian law and have their principal places of business in Canada. R1-2 at WW 3,4,5. Sherritt International is a wholly-owned subsidiary of Viridian. R1-2 at ¶ 4. Their operations include the production and marketing of fertilizers, the production

---

[2]We note that district court documents as well as the briefs submitted to this Court, group the defendants in various ways. For convenience here, we will refer to Viridian, CNW, Sherritt International, ICCI, Corefco, and Moa Nickel collectively as the "Canadian defendants," which is how these defendants denominate themselves in their brief on appeal.

and sale of oil and natural gas, the mining, refining, and sale of cobalt and nickel, and the development, marketing, and production of advanced industrial materials and metallurgical technologies. R1-2 at ¶ 6.

Defendant Corefco is organized under Canadian law as well. R1-2 at ¶ 14. Fifty per cent of its stock is held by Viridian and Sherritt International, and 50% is owned by General Nickel Co., S.A. ("GNC"), one of the defendant Cuban corporations. R1-2 at ¶ 14.

Defendant Moa Nickel is a corporation organized under the laws of Cuba with its principal place of business in Cuba. R1-2 at ¶ 12. Half of its stock is owned by GNC, and the other half by Viridian and Sherritt International. R1-2 at ¶ 12.

Defendant ICCI is a corporation organized under the laws of The Bahamas. R1-2 at ¶ 13. Its stock, too, is equally owned by GNC and by Viridian and Sherritt International. R1-2 at ¶ 13.

GNC, Moa Nickel, ICCI, and Corefco are included on the United States Department of the Treasury's list of "Blocked Persons and Specially Designated Nationals," for purposes of the United States government's embargo against Cuba. R1-2 at WW 11-14.

In addition to the claims against these defendants, Consolidated also filed suit against the Republic of Cuba and four Cuban corporations: Cubapetroleo ("Cupet"), Commercial Cupet, S.A. ("Commercial Cupet"), Union de las Empresas de Niquel ("Union"), and the aforementioned GNC. R1-2 at WW 7-11.

Consolidated contends that Viridian, Sherritt International, and CNW ( the order of dismissal calls these the "Viridian defendants") hold a working interest in four oil production contracts with Cuba, Cupet, and Commercial Cupet. R1-2 at ¶ 21. These are production-sharing contracts, under which Viridian provides technical assistance in return for a percentage of the incremental oil production. According to the complaint, these contracts encompass most of the oil fields in Cuba, including Consolidated's expropriated properties and rights. R1-2 at ¶ 21.

Consolidated claims that Viridian's share of the oil produced from these wells is sold to the Republic of Cuba, which pays Viridian with nickel and cobalt ore. R1-2 at ¶ 21. Viridian also operates a cobalt and

3

nickel refining operation through its affiliates Moa Nickel, Corefco, and ICCI, and uses these materials, *inter alia,* in its fertilizer production business. R1-2 at WW 23, 25, 26. Consolidated contends that some of these products find their way to markets in the United States, and that this arrangement violates international law by wrongfully converting properties and rights which the Cuban government expropriated from Consolidated in 1959. R1-2 at WW 25, 27.

The district court referred motions and discovery matters to a magistrate judge. Viridian, Corefco, CNW, Sherritt International, Moa Nickel, and ICCI, filed motions to dismiss under Fed.R.Civ.P. 12(b)(6). These defendants also filed motions to dismiss for lack of personal jurisdiction under 12(b)(2). Both grounds for dismissal were thoroughly briefed and argued. The magistrate judge permitted Consolidated to conduct limited discovery on the question of jurisdiction, and allowed the plaintiffs to file a supplemental memorandum on jurisdiction after taking the depositions.[3]

On April 2, 1997, the magistrate judge heard oral argument on all motions to dismiss. On July 30, 1997, the court dismissed plaintiffs' claims against Viridian, Corefco, CNW, and ICCI for failure to state a cause of action under 12(b)(6). R4-117. The motions to dismiss pursuant to 12(b)(6) filed by defendants Moa Nickel and Sherritt International were granted by order dated September 18, 1997, in accordance with the court's July 30 opinion. R5-141. The court determined that plaintiffs' claims were barred by the act of

---

[3]Consolidated deposed Donald M. Kossey, Controller of Viridian; Murray A. Skinner, Vice President, Legal, of CNW; Frederic J. Wellhauser, President and Chief Executive Officer of Sherritt International; Dennis G. Maschmeyer, Chief Operating Officer of Corefco; and Garnet Clark, Chief Financial Officer of ICCI. Each had provided an affidavit in support of the motions to dismiss for lack of personal jurisdiction. A sixth executive and declarant, Werner Bink, Chief Operating Officer of Moa Nickel, was unavailable at the time of the depositions. Mr. Clark, who is also Chief Financial Officer of Moa Nickel, was made available to answer questions about that corporation.

Following these depositions, Consolidated filed a supplemental memorandum on the issue of jurisdiction, entitled "Plaintiffs' Post-Jurisdictional [Deposition] Discovery Memorandum of Law in Opposition to Defendants' Motions under Rule 12(b)(2), Federal Rules of Civil Procedure, to Dismiss the First Amended Complaint." R4-103.

**4**

state doctrine, and did not reach the jurisdictional question.[4]  All other motions in the case, including the motions to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, were deemed moot.  R4-107.

The court did not adjudicate Consolidated's claims against the Republic of Cuba or any of the Cuban defendants.  Indeed, although the court directed the United States Department of State to serve the complaint on the Cuban corporations, it is not clear from the record that these defendants were ever served.  A default judgment was entered against the Republic of Cuba on July 31, 1997.  R4-114.

After some procedural delay, the district court entered a final judgment on October 7, 1997 in favor of Viridian, CNW, Sherritt International, Corefco, ICCI, and Moa Nickel, dismissing all claims against them. R5-151.

Dr. Alberto Diaz Masvidal, *pro se,* moved to intervene on October 20, 1997.  R5-152.  On November 7, 1997, the district court issued an omnibus order which mooted Dr. Masvidal's motion to intervene as well as all other outstanding motions in the case.  The order also vacated the default judgment against the Republic of Cuba, and dismissed plaintiffs' claims against Cuba without prejudice.  Dr. Masvidal's motion to stay and his petition for a re-hearing were denied, and the case was closed as to all defendants.  R6-160.  This appeal followed.

We have jurisdiction over a final decision of a district court under 28 U.S.C. § 1291.

II.

---

[4]The act of state doctrine is a rule of judicial restraint, which operates to prohibit a United States court from judging the validity of an act of a foreign sovereign taken within its own territory. *W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp.,* 493 U.S. 400, 405, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990).  As the United States Supreme Court emphasized in *Underhill v. Hernandez,* 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897), "[e]very sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of a government of another, done within its own country." *Id.* at 252, 18 S.Ct. 83.  Plaintiffs argued that their case fell within two exceptions to the act of state doctrine:  the Second Hickenlooper Amendment, 22 U.S.C. § 2370(e)(2), and the so-called "commercial activity" exception to the doctrine.  The magistrate judge determined that neither exception applied, and dismissed the claims against each moving defendant.

Whether a federal court has personal jurisdiction over a defendant is a question of law and subject to *de novo* review. *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626 (11th Cir.1996). Where a district court does not conduct an evidentiary hearing on the question, the burden is on the Plaintiff to establish a prima facie case of personal jurisdiction over a nonresident defendant. *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990), citing *Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir.1988). A prima facie case is established if the Plaintiff presents enough evidence to withstand a motion for directed verdict. *Id.* We must accept the allegations in the complaint as true, to the extent that they are uncontroverted by the Defendant's affidavits and depositions, and must construe all reasonable inferences in favor of the Plaintiff. *Id.*

III.

The amended complaint relies on Fed R. Civ. P. 4(k)(2), the national long-arm statute, as the basis of personal jurisdiction over the Canadian defendants.[5] R75 at ¶ 17. Where, as here, a defendant is not subject to the jurisdiction of the courts of general jurisdiction of any one state, Rule 4(k)(2) permits a court to aggregate a foreign defendant's nationwide contacts to allow for service of process provided that two conditions are met: (1) plaintiff's claims must "arise under federal law;" and, (2) the exercise of jurisdiction must be "consistent with the Constitution and laws of the United States." Fed.R.Civ.P. 4(k)(2). Consolidated contends that the necessary source of federal law may be found in the Second Hickenlooper Amendment, codified at 22 U.S.C. § 2370(e)(2), the International Claims Settlement Act, 22 U.S.C. § 1621 *et seq.,* or in international law. We need not reach this argument, however, since we find that the Appellants have not met the second prong of the analysis.

Jurisdiction "consistent with the Constitution and laws of the United States" is that which comports with due process. Considerations of due process require that a non-resident defendant have certain minimum

---

[5]Appellants insist that the district court improperly dismissed their claims against the Canadian defendants without permitting them to engage in jurisdictional discovery. The record, however, shows otherwise. See *supra* at 2844, n. 3.

**6**

contacts with the forum,[6] so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.,* 786 F.2d 1055, 1057 (11th Cir.1996), quoting *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The nature and quality of these contacts, however, vary depending upon whether the type of personal jurisdiction being asserted is specific or general.

Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint. *Madara v. Hall,* 916 F.2d 1510, 1516 n. 7 (11th Cir.1990), citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8 & 9, 104 S.Ct. 1868, 1872 nn. 8 & 9, 80 L.Ed.2d 404 (1984). It has long been recognized that a court has the minimum contacts to support specific jurisdiction only where the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The requirement that there be minimum contacts is grounded in fairness. It assures that "the defendant's conduct and connection with the forum State [is] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

General personal jurisdiction, on the other hand, arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated. The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state. *Borg-Warner,* 786 F.2d at 1057, citing *Hall,* 466 U.S. at 412-13, 104 S.Ct. at 1872-73.

Although Appellants strenuously argue that we need only find the minimum contacts required for specific jurisdiction, it is clear to us that the applicable due process requirements are the more restrictive ones

---

[6]Where service of process has been effected pursuant to Rule 4(k)(2), the applicable forum for the minimum contacts analysis is the United States. *United States Securities and Exchange Commission v. Carrillo,* 115 F.3d 1540, 1544 (11th Cir.1997).

of general jurisdiction. The allegations in this complaint do not arise out of any contacts the Canadian defendants have with the United States. Rather, the cause of action involves properties in Cuba, which were expropriated by the Cuban government, and which have allegedly been developed by the Canadian defendants. Thus, we must find the basis of the district court's exercise of personal jurisdiction, if any, under the stricter standard of general jurisdiction, and must decide whether the Canadian defendants have had continuous and systematic general business contacts with the United States sufficient to subject them to the jurisdiction of its courts. *Delong Equip. Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 844 (11th Cir.1988) (quoting *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 438, 72 S.Ct. 413, 414, 96 L.Ed. 485 (1952)).

Appellants were questioned closely at oral argument about the Canadian defendants' contacts with the United States, and could identify only the three contacts listed in their supplemental memorandum: (1) in March of 1993 and March of 1994, Viridian issued bonds and debentures in the United States; (2) in connection with these offerings, Viridian appointed an agent for service of process in the United States; and (3) Viridian's fertilizer and chemicals are marketed, through a subsidiary, Viridian Fertilizers, Inc. (f/k/a Sherritt Fertilizers, Inc.) ("VFI"), in the United States. R4-103 at 22-23. Our review of the record reveals no other contacts between Viridian and the forum.

We emphasize that a nonresident corporation's contacts with the forum that are unrelated to the litigation must be substantial in order to warrant the exercise of personal jurisdiction under Rule 4(k)(2). *Associated Transport Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.,* 197 F.3d 1070, 1075 (11th Cir.1999), citing *Madara,* 916 F.2d at 1516. For example, merely purchasing materials, even if done regularly, is not contact sufficient to support personal jurisdiction. *Hall,* 466 U.S. at 418, 104 S.Ct. at 1878, citing *Rosenberg Bros. & Co. v. Curtis Brown Co.,* 260 U.S. 516, 518, 43 S.Ct. 170, 171, 67 L.Ed. 372 (1923). Holding meetings in the forum state to sign a boilerplate contract will not support specific jurisdiction. *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.,* 792 F.2d 989, 993-94 (11th

**8**

Cir.1986). Placing advertisements in a newspaper is not a sufficient connection to the forum for in personam jurisdiction. *Johnston v. Frank E. Basil, Inc.,* 802 F.2d 418 (11th Cir.1986).

We find that Viridian's limited and sporadic connections with the forum are not the sort of general systematic business contacts required to sustain the assertion of general personal jurisdiction. Plaintiffs first point to the fact that Viridian's predecessor twice issued bonds and debentures to investors in the United States. This court has not previously considered whether a securities offering in the forum supports general jurisdiction over a non-resident corporation. However, in *SEC v. Carrillo,* a specific jurisdiction case, this court recently addressed the conduct of a Costa Rican corporation which offered securities to United States investors. 115 F.3d 1540 (11th Cir.1997). The SEC brought an action for securities fraud. On the jurisdictional issue, we found that by placing advertisements and articles for the securities in airlines' magazines, mailing materials and application forms to American investors, maintaining domestic bank accounts in connection with the offering, and mailing at least one stock certificate to a United States investor, the corporate defendant had purposefully availed itself of the forum sufficient to support specific personal jurisdiction.

In the action before us, Viridian has had far fewer contacts with the United States, and, since the offering of debentures had absolutely nothing to do with the claims presently being litigated, the minimum contacts required are much more stringent. We decline to find that by offering bonds and debentures in the United States, several years before this action was filed, Viridian exhibited the sort of systemic business contacts with the forum that are consistent with the assertion of general personal jurisdiction. As we noted in *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.,* 792 F.2d 989, 992 (11th Cir.1986), where a foreign corporation does not engage in general business in the forum, simply negotiating a contract there will not support general in personam jurisdiction.

We also reject Plaintiffs' argument that Viridian is amenable to service of process under Rule 4(k)(2) because it appointed an agent for service of process in connection with the offerings of bonds and debentures.

**9**

The casual presence of a corporate agent in the forum is not enough to subject the corporation to suit where the cause of action is unrelated to the agent's activities. *International Shoe,* 326 U.S. at 317, 66 S.Ct. 154.

Courts of appeals that have addressed this issue have rejected the argument that appointing a registered agent is sufficient to establish general personal jurisdiction over a corporation. *Bankhead Enterprises, Inc. v. Norfolk & Western Railway Co.,* 642 F.2d 802, 805 (5th Cir., Unit B, April 15, 1981);[7] *Wenche Siemer v. Learjet Acquisition Corp.,* 966 F.2d 179, 183 (5th Cir.1992); *Ratliff v. Cooper Laboratories, Inc.* 444 F.2d 745, 748 (4th Cir.1971); accord *Sofrar, S.A. v. Graham Engineering Corp.,* 35 F.Supp.2d 919, 921 (S.D.Fla.1999) (finding no general jurisdiction under Florida's long-arm statute, even though defendants appointed an agent for service of process and were registered to do business in the state); *Moore v. McKibbon Brothers, Inc.,* 41 F.Supp.2d 1350, 1354 (N.D.Ga.1998) (finding general jurisdiction under North Carolina's long-arm statute where, in addition to appointing a registered agent, the corporation owned and leased property and was registered to transact business in the state).

Finally, we must reject Consolidated's assertion that Viridian is amenable to service of process under Rule 4(k)(2) because a subsidiary, Viridian Fertilizers, Inc. ("VFI"), markets the defendant's products in the United States. It is well established that as long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other. *Cannon Manufacturing Co. v. Cudahy Packing Co.,* 267 U.S. 333, 337, 45 S.Ct. 250, 251, 69 L.Ed. 634 (1925). Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there. Where the "subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary."

---

[7]The Eleventh Circuit has adopted as precedent all Fifth Circuit cases decided before September 30, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981).

*Portera v. Winn Dixie of Montgomery, Inc.,* 996 F.Supp. 1418, 1423 (M.D.Ala.1998), quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069 (2d ed.1987).

For Consolidated to persuade us that the district court had general personal jurisdiction over Viridian because of VFI's activities in the United States, it would have to show that VFI's corporate existence was simply a formality, and that it was merely Viridian's agent. *Id.* Consolidated has not carried its burden. Viridian's controller, Donald M. Kossey, provided an affidavit regarding the corporation's organization and later testified at a deposition during jurisdictional discovery. Kossey stated that Viridian is a Canadian corporation, organized under Canadian law and having its principal place of business in Canada. Kossey Decl. R1-17 at 1. Viridian has not been registered to do business in the United States. Kossey Decl. R1-17 at 3. Viridian does not have employees in the United States and does not own property there. Kossey Decl. R1-17 at 4. VFI, on the other hand, is incorporated in the state of Washington and has its principal place of business there. Kossey Decl. R1-17 at 3; Kossey Dep. R4-84 at 26. It also maintains warehouse facilities in California and Idaho. Kossey Dep. R4-84 at 13. Kossey testified that VFI has its own officers and boards of directors, determines its own pricing and marketing practices, has its own bank accounts offices, and employees. Kossey Decl. R1-17 at 3; Kossey Dep. R4-84 at 47. Appellants have come forth with no evidence to contradict these assertions, and we find nothing in the record to indicate that VFI's activities should be imputed to its corporate parent for the purpose of finding general personal jurisdiction over Viridian.

Certainly none of these contacts between Viridian and the United States, taken individually, supports general jurisdiction. Rule 4(k)(2) permits us to aggregate a non-resident defendant's contacts with the forum for the minimum contacts analysis; we have done so and find that the contacts which Consolidated has identified, even when considered together, fall far short of the showing we deem necessary for due process. Accordingly, we find that the district court lacked general personal jurisdiction over Viridian, and we will affirm the dismissal of all claims against this defendant on jurisdictional grounds.

**11**

With regard to the other Canadian defendants, Appellants conceded at oral argument that Sherritt International and its three affiliates, Moa Nickel, Corefco, and ICCI, have never done any business in the United States. The record shows that none of these corporations are registered to do business in the United States; none of them have sold products, maintained offices or employees, or owned property in the United States. Wellhauser Decl. R2-45 at 2; Maschmeyer Decl. R1-15 at 2; Clark Decl. R3-60 at 2; Bink Decl. R2-46 at 2. The amended complaint is devoid of any allegations that these defendants have had any contacts with the United States. Furthermore, Moa Nickel, ICCI, and Corefco are included on the United States Department of the Treasury's list of "Blocked Persons and Specially Designated Nationals," and therefore are prohibited from doing business in the United States.

Likewise, Appellants conceded that defendant CNW currently has no operations at all, in this country or elsewhere. When the complaint in this action was filed, CNW was a subsidiary of Viridian, but had previously conveyed its Cuban oil and gas business to a subsidiary of Sherritt International. Skinner Dep. R4-84 at 35-36. CNW did have subsidiaries in the United States with oil, gas, or geothermal leases, all but one of which were liquidated in 1992, before this lawsuit was filed. Skinner Decl. R1-17 at 2; Skinner Dep. R4-84 at 37-42. The remaining subsidiary was a Montana corporation with its own officers and board of directors, which owned a dormant geothermal lease. Skinner Decl. R1-17 at 2; Skinner Dep. R4-84 at 45-51. These contacts are so inconsequential that they cannot possibly support the district court's assertion of general personal jurisdiction over CNW. Accordingly, we find that the district court lacked personal jurisdiction over Consolidated's claims against defendants Sherritt International, Moa Nickel, Corefco, ICCI, and CNW, and we will affirm the dismissal of all claims against these defendants.

IV.

Due process requires that the Canadian defendants have sufficient regular and systematic business contacts with the United States to justify the exercise of general personal jurisdiction over them. We find that the meager contacts alleged against these defendants are not sufficient to subject them to the jurisdiction of

the district court under Rule 4(k)(2), and that Dr. Masvidal's motion to intervene was properly denied.  We therefore AFFIRM.