**NISSIM CORP., Plaintiff,**

v.

**CLEARPLAY, INC., Matthew Jarman, Lee Jarman, and William Aho, Defendants.**

No. 04–21140–CIV.

United States District Court, S.D. Florida.

Oct. 22, 2004.

John C. Carey, Richard Mockler, Stroock Stroock & Lavan, Miami, FL, Steven B. Pokotilow, Stroock Stroock & Lavan, New York, NY, Bruce S. Sperling, Joseph M. Vanek, Thomas A. Vickers, Daar & Vanek, Chicago, IL, for Nissim Corp., plaintiff.

James Anthony Gale, Christopher Paul Demetriades, Feldman Gale, Miami, FL,

Gregory S. Tamkin, Dorsey & Whitney, Denver, CO, for ClearPlay, Inc., Matthew Jarman, Lee Jarman, defendants.

## ORDER ON DEFENDANT LEE JARMAN'S MOTION TO DISMISS

HUCK, District Judge.

THIS MATTER is before the Court on Defendant Lee Jarman's Motion to Dismiss for Lack of Personal Jurisdiction, filed August 25, 2004. The Court has considered the Motion, the Response, and the Reply, as well as the Sur–Reply and Response to the Sur–Reply. Being otherwise duly advised, the Court finds as follows.

### Factual Background and Procedural History

This case was filed on May 13, 2004, alleging four claims of patent infringement against Defendant ClearPlay, one claim of breach of contract against Matthew and Lee Jarman, and one claim of theft of trade secrets against all Defendants. The Complaint alleged that ClearPlay infringed a number of Nissim's patents—patents which DVD device manufacturers must license from Nissim in order to comply with specifications for DVD players or which provide particular options to the purchaser of the device, such as the ability to play multiple versions of a movie from the same DVD. In particular, Nissim owns a patent for its "CustomPlay" software, which provides a method of filtering some content from commercially available versions of DVD movies that certain viewers might find objectionable. In 2000, Matthew and Lee Jarman contacted Nissim to express an interest in the CustomPlay software, eventually signing a Bilateral Confidentiality Agreement through which Nissim allowed the Jarmans to have access to its business plan and demonstration versions of the CustomPlay software. In 2001, the Jarmans formed ClearPlay and began producing and distributing the "ClearPlay filter" software package, which the company eventually licensed to Thomson Multimedia SA for use in a DVD player that has been nationally marketed since April, 2004, under the RCA brand name ("ClearPlay RCA Player"). Nissim alleges in this suit that Defendants have infringed Nissim's patents by producing, licensing, and marketing the ClearPlay RCA Player and the ClearPlay filter software without obtaining a license from Nissim.

On June 23, 2004, ClearPlay filed its answers, affirmative defenses, and a counterclaim. On that same day, Matthew and Lee Jarman filed a motion to dismiss on the ground that this Court did not have personal jurisdiction over them based only on the two Florida state claims asserted against them. Rather than file a response, Nissim filed an Amended Complaint on July 29, 2004, adding William Aho as an individual defendant and asserting the patent claims against all Defendants based on allegations that the individual defendants aided and abetted ClearPlay's direct infringement of the Nissim patents. On August 25, 2004, Defendants ClearPlay, Aho, and Matthew Jarman filed an Answer to the Amended Complaint. That same day, Lee Jarman again moved to dismiss for lack of personal jurisdiction. In the Motion to Dismiss, Lee Jarman argues that Nissim has improperly asserted the patent claims against him solely in order to obtain personal jurisdiction and that, in the absence of the patent claims, Nissim is unable to establish the minimum contacts with Florida necessary to support personal jurisdiction on the two remaining state claims. Nissim argues that the Amended Complaint contains sufficient facts to assert a claim for inducement infringement against Lee Jarman under established patent law and that, in the alternative, Lee Jarman has sufficient contacts with Florida in the context of this dispute to subject him to personal jurisdiction here on the

state claims. The Motion has been fully briefed and is currently before the Court.

## Legal Standard

■ In ruling on a Motion to Dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. *Dunn v. Air Line Pilots Ass'n,* 193 F.3d 1185, 1190 (11th Cir.1999). On a motion to dismiss for failure to state a claim upon which relief can be granted, "[a] complaint must not be dismissed unless it is shown that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Jackam v. Hosp. Corp. of Am. Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir.1986). On a motion to dismiss for lack of personal jurisdiction, the motion "should be denied if plaintiff alleges sufficient facts to support a reasonable inference that defendant can be subjected to jurisdiction of the court." *Id.* While facial challenges to the legal sufficiency of a claim, such as for failure to state a claim, must be decided solely on the basis of the complaint, presuming all of the allegations contained therein to be true, "[r]esolution of a pretrial motion that turns on findings of fact—for example, a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2)—may require some limited discovery before a meaningful ruling can be made." *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367 (11th Cir.1997).

■ Where a district court does not hold an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a *prima facie* case for personal jurisdiction over a non-resident defendant by presenting enough evidence to withstand a motion for directed verdict. *Consol. Dev. Corp. v. Sherritt,* *Inc.,* 216 F.3d 1286, 1291 (11th Cir.2000). In determining whether a *prima facie* case has been established, the plaintiff's allegations in the complaint must be accepted as true to the extent that they are uncontroverted by the defendant's affidavits. *Id.* Where a defendant's affidavits conflict with evidence presented by the plaintiff, the court must construe all reasonable inferences in favor of the plaintiff. *Cable/Home Communication Corp. v. Network Prods., Inc.,* 902 F.2d 829, 855 (11th Cir.1990). " 'When there is a battle of affidavits placing different constructions on the facts, the court is inclined to give greater weight, in the context of a motion to dismiss, to the plaintiff's version ...,' particularly when 'the jurisdictional questions are apparently intertwined with the merits of the case.' " *Delong Equip. Co. v. Wash. Mills Abrasive Co.,* 840 F.2d 843, 845 (11th Cir.1988) (quoting *Psychological Res. Support Sys. v. Gerleman,* 624 F.Supp. 483, 484 (N.D.Ga.1985)). Moreover, although issues raised in a Motion to Dismiss should generally be decided prior to trial, the Federal Rules specifically grant district courts the discretion to defer such determinations until trial. *See* Fed. R. Civ. Pro. 12(d)("The defenses specifically enumerated (1)-(7) in subdivision (b) of this rule [which includes jurisdiction over the person] ... shall be heard and determined before trial on application of any party, unless the court orders that the hearing and determination thereof be deferred until the trial.").

## Analysis

■ The patent statutes establish that "whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).[1] In its Amended Com-

---

1. In some instances, a corporate officer can also be held directly liable for infringement without proof of specific intent under 35 U.S.C. § 271(a). *See, e.g., A. Stucki Co.v.* *Schwam,* 634 F.Supp. 259, 265 (E.D.Pa. 1986)("Where the officer or director has ordered the infringing method of manufacture or has controlled the sale of the infringing

plaint, Nissim alleges that Lee Jarman "actively aided and abetted ClearPlay's infringement by supervising, directing, participating in, and/or approving ClearPlay's infringing activities" and that he, with his brother Matthew Jarman, "willfully created a company, ClearPlay, to produce products that consciously disregarded the Nissim Patents." Lee Jarman asserts that he cannot be found liable for inducement infringement because he did not participate in any of the decisions or actions that have formed the basis for this patent infringement suit, arguing that this claim was added by Nissim merely in an attempt to gain jurisdiction over him. He avers that his responsibilities as the Chief Financial Officer at ClearPlay have limited his contributions to "handl[ing] the finances of the company" and that he "is not involved in the production of any product or software for ClearPlay."

Nissim, on the other hand, asserts that Lee Jarman's role in the company appears much more significant. Although Nissim has been limited in its ability to provide supporting evidence by the fact that discovery has not yet been completed, Nissim has provided evidence from press releases, from an affidavit of Lee Jarman from another civil case, and from other publicly available sources, indicating that Lee Jarman's affidavit filed in support of this motion understates his actual role in the company and his role in inducing ClearPlay's alleged infringement. Nissim further suggests that the Court should reasonably infer, for the purposes of the Motion to Dismiss, that Lee Jarman's involvement in inducing the infringing acts may be greater than represented in his affidavit based on the fact that he is, with his brother, a co-founder and primary officer of this company whose sole product appears to be the

technology used in the allegedly infringing DVD playing device and because he was clearly aware of Nissim's patent rights prior to his company's development and marketing of the allegedly infringing products. In a sur-reply, Nissim bolstered these claims by filing documents obtained under subpoena from a third party which suggest that Lee Jarman was substantially involved in discussions and other efforts related to the marketing and distribution of the allegedly infringing DVD playing devices, including correspondence with Wal–Mart regarding sales of the ClearPlay DVD Players after this litigation had commenced. In a response to that sur-reply, Lee Jarman challenges Nissim's interpretation of those documents and Nissim's assessment of the weight and relevance of that evidence, arguing that those documents do not establish sufficient facts to support even a *prima facie* case of infringement by Lee Jarman.

While it is established that a corporate officer can be found liable for active inducement of infringement, the specific standard for holding a corporate officer liable under that theory is not entirely settled. It is clear that inducement infringement requires that a corporate officer must have possessed the specific intent to "aid and abet" infringement, *Water Techs. Corp. v. Calco, Ltd.,* 850 F.2d 660, 668 (Fed.Cir.1988), but there is some disagreement in the case law regarding the nature of the intent that is required for individual liability under 35 U.S.C. § 271(b). Lee Jarman claims that, in order to be found liable for inducement infringement, Nissim must show that he personally intended, through his acts as a corporate officer, to infringe Nissim's patents. He bases this view on a Federal Circuit decision which held that:

---

goods, he is jointly liable with the corporation for patent infringement without regard to his specific intent or knowledge."), *aff'd,* 849

F.2d 593 (Fed.Cir.1988). However, Nissim appears, in this case, to be alleging only active inducement by the corporate officers.

It must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement. The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements. *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990); *see also Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1412 (Fed.Cir. 1996)("It is an insufficient basis for personal liability that the officer had knowledge of the acts alleged to constitute infringement.").

Although the *Manville* case does suggest this higher standard for proving the specific intent element of inducement infringement that approaches the quantum of proof required for establishing willful infringement, the standard that case enunciates, without citation or discussion, appears to depart from previous Federal Circuit decisions. In *Orthokinetics Inc. v. Safety Travel Chairs, Inc.*, the Federal Circuit held that "[c]orporate officers are presumably aware of what they are doing, and in that sense they can be said to have acted 'willfully.' However, that does not mean that their acts must rise to the level recognized by the law as constituting willful infringement before they can be liable for infringement by their corporation." 806 F.2d 1565, 1579 (Fed.Cir.1986). In another case, the Federal Circuit discussed in greater depth the definition of "active inducement" in 35 U.S.C. § 271(b), holding that "we are of the opinion that proof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement." *Hewlett–Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed.Cir.1990). The Federal Circuit has also specifically authorized a "broad reading of § 271(b)" that allows trial courts to find liability for corporate officers who actively aid and abet in a corporation's infringement, a requirement which can be satisfied, for example, by a finding that the corporate officer was the "moving force" behind the corporation's acts which constitute infringement or where the corporate officer "aided, participated in, approved, ratified and induced" the corporation's infringing acts. *See Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478, 481 (Fed. Cir.1985).

In a very recent decision, the Federal Circuit has, in fact, acknowledged that "there is a lack of clarity concerning whether the required intent must be merely to induce the specific acts or additionally to cause an infringement." *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1378 (Fed.Cir.2004). However, in that case, the Federal Circuit decided that it "need not resolve any ambiguity in the case law on this point because there is sufficient evidence to support the district court's finding under either standard." *Id.* Some other courts that have addressed this conflict, however, have found that the earlier standard requiring only inducement of the infringing acts is still controlling. One district court found that it was not clear whether the Federal Circuit intended for *Manville* to create a new rule and overturn long-standing precedent, but decided that, even if the court had intended to do so, *Manville* would still not be binding. *Symbol Techs., Inc. v. Metrologic Instruments, Inc.*, 771 F.Supp. 1390, 1403–04 & 1405 n. 14 (D.N.J.1991). The court based that finding on the Federal Circuit's own rules regarding precedent, which state that "prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc*," and, "[w]here there is a direct conflict, the precedential decision is the first." *Id.* at 1403 (quoting *Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed.

Cir.1988)). That court further noted that no *en banc* decision had overruled the pre-*Manville* standard and that *Manville* itself did not provide any justification for over-turning previous precedent. *Id.* at 1403–04 & n. 1405 n. 14. Another district court adopted this same rationale, but addition-ally distinguished *Manville* from its case based on factual differences. *Curtis Mfg. Co., Inc. v. Plasti–Clip Corp.,* 888 F.Supp. 1212, 1222–23 (D.N.H.1994). The district court noted that in *Manville,* the officers of the company were not aware of the patent held by the plaintiff until after the infringement action was initiated, whereas there was evidence in *Curtis* that the de-fendants knew of the patents long before the infringement action was filed. *Id.* at 1223. The Court found there that, even if proof of specific intent did require proof of willful infringement, the fact that the cor-porate officers had prior knowledge of the patents distinguished that case from *Man-ville.* *Id.* Accordingly, the court deter-mined that genuine issues of material fact remained to be resolved by the trier of fact as to individual liability under a theory of inducement infringement. *Id.*

Therefore, while there is some Federal Circuit case law suggesting that the stan-dard for proving inducement requires proof of an actual intent to infringe, other arguably controlling authority from the Federal Circuit and from other courts sup-ports that the standard for proving induce-ment is much lower, requiring only that a corporate officer "knowingly aid and abet another's direct infringement." *Water Techs. Corp.,* 850 F.2d at 668; *see also Ziggity Sys., Inc. v. Val Watering Sys.,* 769 F.Supp. 752, 795 (E.D.Pa.1990)("[T]he 'knowing' requirement judicially imposed under section 271(b) is merely a require-ment that the corporate officer be con-scious and aware of his activities—not that he was aware that his activities amounted to infringement."). Some courts have found that this active participation require-ment can be satisfied based on "the effec-tive control the individual held over the corporation and his active participation in the infringement activities." *E.g., Curtis Mfg. Co.,* 888 F.Supp. at 1222; *Fromson v. Citiplate, Inc.,* 886 F.2d 1300, 1304 (Fed. Cir.1989)("The cases are legion holding corporate officers and directors personally liable for 'participating in, inducing, and approving acts of patent infringement' by a corporation."); *Amicus, Inc. v. Alosi,* 723 F.Supp. 429, 431–32 (N.D.Cal.1989)(finding that, "although the law has not been so clear regarding the circumstances in which a corporate officer will be found to have induced the infringement," there are cases that provide "ample support for the posi-tion that liability should be imposed on an individual officer for the infringements of his corporation when the individual is basi-cally responsible for all the activities of the corporation"); *Wayne Automation Corp. v. R.A. Pearson Co.,* 790 F.Supp. 1505, 1507 (E.D.Wash.1991)(plaintiff must show that the defendant "played some signifi-cant role in perpetrating infringement"). Other cases have held that "[g]enerally, knowledge has been construed as knowl-edge of an infringement controversy." *E.g., Symbol Techs.,* 771 F.Supp. at 1404.

■ However, the Court need not defin-itively resolve this question of the appro-priate standard for finding a corporate officer liable for inducement infringement at this point because Nissim has made allegations that, when taken in the light most favorable to the plaintiff, are suffi-cient to state a claim for inducement in-fringement.[2] Additionally, in response to Lee Jarman's jurisdictional challenge, Nis-

2. The Court raises the ambiguity in the legal standard to be applied for inducement in-fringement at this time largely because that question will likely become an issue in subse-quent proceedings.

sim has provided evidence sufficient to make a *prima facie* case for inducement infringement regardless of whether proof of willful infringement is required. Nissim has provided evidence supporting its claims that Lee Jarman was involved in early communications with Nissim, had knowledge of Nissim's patents before the ClearPlay filters were developed and the ClearPlay DVD Players were marketed, and has had a significant role in the business operations of ClearPlay. Therefore, viewed in the light most favorable to Nissim, the facts could support either inducement due to an actual intent to infringe based on his actions in light of his knowledge of the patents or that could support that he merely aided and abetted the allegedly infringing acts of the corporation based on Nissim's allegations as to the true extent of his involvement with the company. Thus, the Court does not agree, on the basis of the current record, with Lee Jarman's argument that the record does not support personal jurisdiction over him in Florida.

■■■ Even if the Court agreed that Nissim's evidence were insufficient to create a *prima facie* case, Nissim would be entitled to discovery on these jurisdictional facts so that a "meaningful ruling" could be made on this Motion. *See Chudasama,* 123 F.3d at 1367. Nonetheless, Lee Jarman argues that his affidavit as to his role at ClearPlay is uncontroverted and that

Nissim has, therefore, not carried its burden of showing specific facts to establish jurisdiction. While Nissim admits it does not currently have conclusive evidence regarding Lee Jarman's role in inducing infringement, it does point out that most of the evidence that could prove or disprove that claim is under the control of the Defendants, and, thus, any decision regarding whether personal jurisdiction exists should be deferred at least until after discovery. *See Thompson Trading Ltd. v. Allied Lyons PLC,* 124 F.R.D. 534, 535–36 (D.R.I.1989)("[A]ny relevant evidence is most likely to be under defendants' control. Therefore, it would be unfair to plaintiff to require proof of forum contacts at this early stage."). That discovery process is currently well under way and, in fact, in its sur-reply which disclosed relevant information obtained from a third-party subpoena, Nissim has demonstrated that discovery is likely to lead to additional evidence which this Court should consider before determining whether Lee Jarman had the necessary intent or knowledge. Further, the information Nissim has provided from publicly available sources and from these third-party subpoenas does cast some doubt on Lee Jarman's characterization of his role at the company.[3] Accepting Lee Jarman's argument that the court should simply credit his representations in his affidavit without allowing Nissim to take discovery and present contrary

---

3. Lee Jarman contests Nissim's characterization of the relevance and sufficiency of this evidence, most notably arguing in his response to the sur-reply that none of the "new evidence" raised in that sur-reply establishes that Lee Jarman was the "moving force" behind any alleged infringement by ClearPlay and further arguing that the evidence Nissim has pointed to is insufficient to overcome the clear averments of Lee Jarman himself as to his role in the company. While he may be correct about the insufficiency of the evidence, Lee Jarman is, nonetheless, incorrect in stating that Nissim's evidence is insuffi-

cient to establish a *prima facie* case. It is clear that induced infringement can be proven by circumstantial evidence, and that, in some instances, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1272 (Fed.Cir.1986). Nissim has, at the least, alleged sufficient facts and produced sufficient circumstantial evidence to advance its induced infringement claim against Lee Jarman beyond the pleading stage.

evidence would establish a "rule [that] would empower a defendant to defeat personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff." *Serras v. First Tenn. Bank Nat'l Assoc.*, 875 F.2d 1212, 1215 (6th Cir.1989). It would be inappropriate for the Court to determine, based only on the affidavit of Lee Jarman and the limited information that Nissim has been able to accumulate, that the facts are insufficient to find that Lee Jarman had the intent necessary to be liable for active inducement and that, therefore, this Court does not have jurisdiction.

■ Moreover, since the question of whether Lee Jarman is subject to personal jurisdiction in this case will likely turn on whether Nissim can prove its allegations that he actively induced infringement, the Court finds denial of this Motion is particularly appropriate.[4] In cases where jurisdictional questions are intermeshed with factual questions regarding the merits, a court may hold an evidentiary hearing on those matters or may defer a determination on those jurisdictional issues until trial. *See, e.g., Spector v. LQ Motor Inns, Inc.*, 517 F.2d 278, 284 (5th Cir.1975) ("The jurisdictional and substantive issues are factually meshed. Therefore, decision on the jurisdictional issues is dependent on decision of the merits and should have been reserved until a hearing on the merits."); *McBeath v. Inter-American Citizens for Decency Comm.*, 374 F.2d 359, 362–63 (5th Cir.1967)("[W]here the factual and jurisdictional issues are completely intermeshed, the jurisdictional issues should be referred to the merits, for it is impossible to decide the one without the other."). In an extensive discussion of such a situation, the Ninth Circuit noted that factual determinations, such as determinations of credibility based on conflicting affidavits, can only rarely be resolved by a judge on a written record, stating that "it is preferable that [a decision on the jurisdictional facts] be made at trial, where a plaintiff may present his case in a coherent, orderly fashion without the risk of prejudicing his case on the merits." *See Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1284, 1285 n. 2 (9th Cir.1977); *see also Verizon Online Servs., Inc., v. Ralsky*, 203 F.Supp.2d 601, 609 n. 6 (2002)("As a general matter, when jurisdictional facts are inextricably intertwined with underlying claims, the proper course is to resolve the issue by proceeding on the merits."). In such an instance, the plaintiff must still prove the jurisdictional facts by a preponderance of the evidence at trial. *Data Disc*, 557 F.2d at 1285 n. 2.

Accordingly, the Court finds that it is appropriate to defer ruling on the jurisdictional issues until trial (or summary judgment, if appropriate) because the jurisdictional facts are intermeshed with the ultimate question on the merits of whether Lee Jarman "actively induced" infringement.[5] This conclusion is bolstered

---

**4.** The Court need not rule on whether Lee Jarman had sufficient minimum contacts to permit this Court to exercise personal jurisdiction over him based solely on the state claims at this time, because, if he is liable for inducement infringement, then the Court would have pendent jurisdiction over those claims. If the Court finds at some point in the proceedings that it does not have personal jurisdiction over Lee Jarman on the basis of the patent claims, the Court will consider the arguments regarding personal jurisdiction as to the state claims at that time.

**5.** In his reply, Lee Jarman argues to the contrary, stating that the question on the merits is whether or not ClearPlay actually did infringe Nissim's patents, arguing that a determination on that question does not require a determination of any of the jurisdictional facts. However, a determination on whether ClearPlay infringed is only one part of the determination on the merits; the second step is to determine whether any of the individual defendants aided and abetted, or "actively induced," any direct infringement by ClearPlay. A determination on the merits of that

by the Federal Circuit's observation that "[i]ntent is a factual determination particularly within the province of the trier of fact and may be inferred from all of the circumstances." *Insituform Techs.,* 385 F.3d at 1378 (citing *Water Techs.,* 850 F.2d at 669). If, after discovery is completed, the facts appear insufficient to prove induced infringement by Lee Jarman, he can move for summary judgment and renew his jurisdictional arguments. If material disputes of fact still exist on this claim, then the issue is best presented at trial, as a jurisdictional evidentiary hearing would merely lead to duplication of proceedings. *See Serras,* 875 F.2d at 1215 ("Particularly where the disputed jurisdictional facts are intimately intertwined with the parties' dispute on the merits, .... [j]udicial resources may be more efficiently deployed if the court holds but one hearing on the contested facts" by reserving all factual determinations on the issue for trial). Reserving these issues for trial is particularly appropriate in this case, where Lee Jarman is represented by corporate counsel and where no pretrial motions to dismiss for lack of jurisdiction have been filed by Defendants Clearplay, Matthew Jarman, or William Aho. Accordingly, neither discovery nor trial preparation should require significantly more effort than will already

be required in defending the other Defendants and would likely involve much less time and expense than if the Court held a separate jurisdictional evidentiary hearing solely with respect to Defendant Lee Jarman.[6]

### Conclusion

For the foregoing reasons, the Court finds that Nissim has sufficiently alleged a cause of action against Lee Jarman for active inducement of patent infringement and that the Court would have jurisdiction over Lee Jarman if he is found liable under this theory of recover. Because the jurisdictional facts are inextricably intertwined with a determination on the merits, it is

ORDERED that Lee Jarman's Motion to Dismiss is DENIED. The Court will consider the jurisdictional question at trial or at a later time in the proceedings prior to trial, if appropriate.

question will also establish whether the Court has personal jurisdiction over Lee Jarman on the patent claims.

6. While Lee Jarman has cited a case for the proposition that he should not lose his ability to challenge personal jurisdiction because "some of the facts relevant to personal jurisdiction are also relevant to the merits," even that case acknowledged that "when jurisdictional and merits issues are factually intermeshed, questions about jurisdiction should be referred to the merits." *See Jackson v. FIE Corp.,* 302 F.3d 515, 525–26 (5th Cir.2002); *see also Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors Inc.,* 64 F.Supp.2d 839, 846 (S.D.Ind.1999)(similarly finding that "a defendant's ability to contest personal jurisdiction should not be lost merely because some of the facts relevant to personal jurisdiction are also relevant to the merits" but recognizing that a court "may permit the case to be tried after the plaintiff has made a showing of jurisdiction and postpone a final decision on those facts until trial"), *rev'd on other grounds,* 212 F.3d 1031 (7th Cir.2000). The Court finds this procedure appropriate here, where Nissim's allegations and available facts are sufficient to create a *prima facie* case of inducement infringement against Lee Jarman. The Court emphasizes it has not found that personal jurisdiction does exist, but is merely exercising its discretion to postpone a decision on that question.