**Beverly McLANE and Brad McLane, her husband, Plaintiffs,**

v.

**MARRIOTT INTERNATIONAL, INC., at al., Defendants.**

**Case No. 08–20662–CIV**

United States District Court, S.D. Florida.

May 6, 2010.

**1306**

Joel Stephen Perwin, Beranton James Whisenant, Jr., Foley & Mansfield, Kevin Patrick O'Connor, Miami, FL, Robert L. Parks, Law Offices of Robert L. Parks, P.L., Coral Gables, FL, for Plaintiffs.

Annette Cristina Escobar, Astigarraga Davis Mullins & Grossman, Kevin Patrick O'Connor, Miami, FL, Marian Grace Kennady, Concepcion Martinez & Bellido, Ricardo Hugo Puente, Concepcion Sexton & Martinez, Coral Gables, FL, Hector Ralph Rivera, Quintairos Prieto Wood & Boyer PA, for Defendants.

Bruce R. Marx, Esq., Marlow, Connell, Abrams, Adler, Newman & Lewis, Coral Gables, FL, for Marina de Herradura.

Edward H. Davis, Jr., Edward M. Mullins, Annette C. Escobar, Astigarraga Davis Mullins & Grossman, P.A., Miami, FL, for Defendants Guapizul SRI and Constructora Copt., Ltd.

## OMNIBUS ORDER GRANTING MARINA DE HERRADURA, S.A.'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT (D.E. 210); GRANTING EL SUENO RESORT, LLC'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT (D.E. 209); AND GRANTING DEFENDANT MARRIOTT INTERNATIONAL, INC.'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT (D.E. 215)

JOAN A. LENARD, District Judge.

**THIS CAUSE** is before the Court on Defendants El Sueno Resort, LLC ("ESR"), Marina De Herradura, S.A. ("Herradura") and Marriott International Inc.'s ("Marriott") Motions to Dismiss Plaintiffs' Third Amended Complaint (D.E. 209, 210 and 215), all filed on July 7, 2009. Plaintiffs Beverly and Brad McLane filed their Responses in Opposition to the Motions to Dismiss (D.E. 231–33), on August 3, 2009, to which Defendants replied on August 11, 2009 (D.E. 253–55). Having considered the Motions to Dismiss, responses, replies and the record, the Court finds as follows.

### I. Background

This case arises out of injuries suffered by Plaintiff Beverly McLane resulting from the alleged negligent operation of a sportfishing boat off the coast of Costa Rica. On or around March 24, 2006, Plaintiffs were vacationing at the Los Suenos Marriott Resort ("Resort") in Costa Rica. (Third Am. Compl. at ¶ 23, D.E. 204.) On

that date, Plaintiff Brad McLane, Beverly's husband, chartered a 1998 Boston Whaler named *"Terry Lee"* to go sport fishing in the waters off the coast of Costa Rica. (*Id.*) The *Terry Lee* was owned by Costa Rica Dreams, a boat charter company, and sailed from the marina adjacent to the Resort. (*Id.*) Mr. Hugo Keyner Nuñez Barrios ("Nuñez"), a Costa Rica citizen, captained the boat. (Marriott's Mot. to Dismiss at 9, D.E. 215.) During the voyage, Beverly McLane suffered a burst compression fracture of her L1 vertebrae. (Third Am. Compl. at ¶ 25.) As a result of this injury, Beverly McLane has underwent two spinal surgeries and currently suffers from chronic back pain and numbness in her back and lower extremities. (*Id.* at ¶¶ 25–27.) Plaintiffs allege that Beverly McLane's injuries were caused by the negligent operation of the *Terry Lee.* (*Id.* at ¶ 24.)

Plaintiffs filed suit in this Court on March 13, 2008. On June 26, 2009, Plaintiffs filed their Third Amended Complaint ("Complaint"), which alleged, *inter alia,* counts of negligence against ESR (developer of the Resort) and vicarious liability against Marriott (promoter and day-to-day operator of the Resort) and Herradura (owner of the Resort). (*Id.* at Counts I, IV and VI.) Brad McLane has asserted a loss of consortium claim against all Defendants. (*Id.* at ¶ 86.) On July 7, 2009, Defendants Herradura, Marriott and ESR each filed Motions to Dismiss. Both ESR and Herradura move to dismiss Counts I and VI of the Complaint, respectively, on the bases that this Court lacks personal jurisdiction and the doctrine of *forum non conveniens* strongly weighs in favor of

Costa Rica as an appropriate forum for this suit. Marriott also moves to dismiss Count IV of the Complaint, on the basis of *forum non conveniens.* The Court will address the parties' specific arguments in **Sections II, III and IV,** *infra.*

## II. Herradura's Motion to Dismiss

In its Motion to Dismiss, Herradura argues that (1) this Court lacks personal jurisdiction over it and (2) the balance of relevant factors requires the dismissal of Plaintiffs' claims in favor of litigation in Costa Rica.[1]

### A. Standard for Dismissal for Lack of Personal Jurisdiction

■ It is well settled that "the due process clause ... constrains a federal court's power to acquire personal jurisdiction" over a nonresident defendant. *In re Chase & Sanborn Corp.,* 835 F.2d 1341, 1344 (11th Cir.1988). To determine whether personal jurisdiction over a nonresident defendant may be exercised, the court must determine: (1) whether the state long arm statute permits assertion of jurisdiction and (2) whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy "traditional notions of fair play and substantial justice" under the *Fourteenth Amendment. International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *see Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990).

■ Section 48.193(2) of Florida's long-arm statute provides: "A defendant who is engaged in substantial and not isolated

---

1. Herradura's argument for dismissal on the basis of *forum non conveniens* is identical to that of co-defendants ESR and Marriott and will be addressed with Marriott's Motion to Dismiss, **Section IV,** *infra.*

activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." The reach of this provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the *Fourteenth Amendment. Woods v. Nova Cos. Belize*, 739 So.2d 617, 620 (Fla. 4th DCA 1999). Therefore, with respect to general jurisdiction under Florida's long-arm statute, this Court need only determine whether the exercise of jurisdiction over Defendants would exceed constitutional bounds. In order to establish minimum contacts such that would support the exercise of general jurisdiction, the defendant's contacts must be "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

█ A defendant's challenge to personal jurisdiction may include affidavits, documents or other testimony; then, upon such challenge, the burden shifts to the plaintiff to prove that jurisdiction is proper through the establishment of facts which justify the use of long-arm jurisdiction. *See Jet Charter Service, Inc. v. Koeck*, 907 F.2d 1110, 1112–13 (11th Cir.1990); *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank*, N.V., 701 F.2d 889, 891 (11th Cir.1983).

### B. Discussion

Herradura, a Costa Rican corporation, is both the developer and owner of the Resort and its golf course. Alan Kelso Aff. ¶ 3, D.E. 55. Herradura does not operate the Resort as Marriott took over day-to-day operations in 1999 pursuant to series of agreements between the two entities. Kelso dep. at 33–35, 40–41, 44, 65–66, D.E.

235–36. Herradura does not own the adjacent marina from which Plaintiffs purchased their boat charter, nor does it have any ownership interest in Costa Rica Dreams, owner of the boat. Kelso Aff. at ¶¶ 4–5. Furthermore, Herradura has no offices, property, employees or agents in the state of Florida. *Id.* at ¶ 7. For these reasons, Herradura argues that the Florida long-arm statute does not provide a basis for specific or general personal jurisdiction and it should be dismissed from this action. Herradura Mot. to Dismiss at 7–8, D.E. 210.

Plaintiffs counter Herradura's lack of personal jurisdiction argument by pointing out that Herradura reaps a "pecuniary benefit" from the Resort's contacts in Florida, namely advertising in hobby and recreational magazines sold within the state, sponsorship agreements with and television advertising through entities that advertise to Miami consumers and the Resort's business relationship with a Miami-based shipping company. *See* Pls.' Resp. at 2–4, D.E. 233. Plaintiffs argue that all of these activities are for the benefit and profitability of the Resort, directly affecting the interests of its owner, Herradura. *Id.* at 6. Plaintiffs also note that the Resort maintains a P.O. Box in Miami for the purpose of communication with potential clients. Pls.' Resp. at 2. In support of their argument in favor of personal jurisdiction under Section 48.193(2), Plaintiffs rely on several Florida and Eleventh Circuit cases setting out the contours of what constitutes "substantial and not isolated activity within this state." *See* Pls.' Resp. at 6–10, citing *Meier ex rel. Meier v. Sun International Hotels, Ltd.*, 288 F.3d 1264, 1270 (11th Cir.2002) (Eleventh Circuit reversed the district court's dismissal for lack of personal jurisdiction, finding that defendant had been engaged in substantial

economic activity in Florida through its subsidiary); *Poston v. American President Lines, Ltd.*, 452 F.Supp. 568, 572 (S.D.Fla.1978) (district court found foreign defendant subject to personal jurisdiction where it "engaged in a general course of business in Florida for pecuniary benefit under another name").

### 1. Jurisdiction Under Sections 48.193(2) and 48.181(3)

As discussed in **Section II.A**, *supra*, the reach of Florida's general jurisdiction statute extends to the limits imposed by the *Fourteenth Amendment's* Due Process Clause. *Woods*, 739 So.2d at 620. Herradura will be subject to personal jurisdiction under 48.193(2) if it can be established that its contacts in Florida were "continuous and systematic." *Helicopteros*, 466 U.S. at 416, 104 S.Ct. 1868. This Court concludes Herradura's contacts with Florida do not meet this standard.

■ Contrary to Plaintiffs' contentions, Herradura is not synonymous with, nor does it stand in the shoes of, ESR, the Resort or its agents for the purpose of conducting business activities in Florida. *See* Kelso dep. at 33–35, 65–66; *see also Prentice v. Prentice Colour, Inc.* 779 F.Supp. 578 (M.D.Fla.1991) (mere reliance on allegations in the complaint is insufficient; the plaintiffs must support jurisdictional contentions with affidavits or other competent proof). Lacking property, offices, employees or agents in Florida, Herradura's only relationship with a Florida entity is through its various operating agreements with Marriott. *See* Kelso Dep. at 44. Reduced to a silent ownership role, Herradura plays no part in the day-to-day operations or supervision of the Resort. *See id.* Aside from unsupported conclusory allegations, Plaintiffs put forth

no evidence that Herradura directly or indirectly, through subsidiaries and independent contractors, conducts business activities in Florida.

■ Even if, by virtue of its ownership of the Resort, the marketing and advertising activities of ESR's manager, subsidiaries, affiliates and the Resort could be imputed to Herradura, this would still not be a sufficient enough connection to the forum for *in personam* jurisdiction. *See Fraser v. Smith*, 594 F.3d 842, 847 (11th Cir.2010) (Eleventh Circuit affirmed dismissal for lack of personal jurisdiction where defendant, a foreign tour company, engaged in selected advertising activities in the forum), citing *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir.2000) (*in personam* jurisdiction not supported by defendant's placing of advertisements in a local newspaper). The Resort's advertising activity in Florida, limited to *Sport Fishing Magazine* and *Southern Boating Magazine* and selected sponsorships of fishing tournaments, falls far short of "consistent or systematic" activity required to confer general jurisdiction. *Fraser*, 594 F.3d at 847; *see Price v. Point Marine, Inc.*, 610 So.2d 1339, 1342 (Fla. 1st DCA 1992). Similarly, the existence of the Resort's website, giving information about the Resort and its amenities, is not enough to subject the Resort, and Herradura in turn, to personal jurisdiction. *See Fraser*, 594 F.3d at 847, citing *McBee v. Delica Co.*, 417 F.3d 107, 124 (1st Cir. 2005) ("the mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum."). Making purchases in the forum is also not enough, standing alone, to subject the Resort to jurisdiction in Florida.

*See id.* at 846 (citing *Helicopteros,* 466 U.S. at 417, 104 S.Ct. 1868, where the Supreme Court noted that purchases of helicopters coupled with related trips by employees would not subject a foreign entity to general jurisdiction); *Consolidated Dev. Corp.,* 216 F.3d at 1292 ("merely purchasing materials, even if done regularly, is not contact sufficient to support personal jurisdiction"). When taken in the aggregate, the Resort's activities in the state of Florida still do not rise to the level sufficient to afford Florida courts general jurisdiction over its owner. *See Fraser,* 594 F.3d at 847.

In *Fraser,* the Eleventh Circuit found that a foreign boat operator who engaged in advertising in Miami, established business relationships with travel companies in the United States and maintained a website visible in Florida did not have sufficient contacts for general jurisdiction in Florida Courts. *See id.* There, the family of decedent Charles Fraser sued J & B Tours, a Turks and Caicos company, for various common law claims resulting from a boat explosion. *Id.* at 844. J & B Tours, the operator of the allegedly defective boat, placed advertisements in American publications, the Miami Herald and Miami-based hotels, appeared on an American television show and maintained a website accessible by Florida residents, albeit without maintaining an office in the United States. *Id.* at 844–45. J & B Tours had also developed business relationships with several companies in the United States;

purchasing nearly half of its fleet, including the defective boat, from Florida-based sellers. *Id.* at 845. Furthermore, the owners of J & B Tours, one of whom was a U.S. Citizen with a U.S. passport, had traveled to the United States on numerous occasions for both business and pleasure. *Id.* Viewing all of J & B Tours' contacts in the aggregate, the Eleventh Circuit affirmed the district court's dismissal based on the conclusion that they were insufficient to create general jurisdiction over the defendant in Florida. *Id.* at 847, 852. Herradura's contacts in Florida are strikingly similar to those of J & B Tours in *Fraser.*

Conversely, Plaintiffs' attempts to argue Herradura's contacts in Florida constitute "carrying on a business or business venture in this [s]tate" are unpersuasive. Pls.' Response at 6 (citing *April Indus., Inc. v. Levy,* 411 So.2d 303, 305 (Fla. 3d DCA 1982) and *Dinsmore v. Martin Blumenthal Ass., Inc.,* 314 So.2d 561 (Fla. 1975)).[2] Neither Herradura nor the Resort has conducted activity in Florida in the continuous or systematic manner envisioned by Florida courts which have determined jurisdiction to be appropriate over non-resident defendants. *Cf. Resolution Trust Corp. v. Pharaon,* 915 F.Supp. 351, 359 (S.D.Fla.1996) (personal jurisdiction found appropriate over defendant who, along with his agent, engaged in frequent communications and visits with Florida residents for the purpose of purchasing and selling stock); *April Indus.,* 411 So.2d

---

2. Plaintiffs also cite the unreported opinion in *Buse v. Paradise Grand Hotel Venture, Ltd.,* Case. No. 93–044–CIV–MARCUS (S.D.Fla. Apr. 28, 1994) to support of their argument. *Buse* is easily distinguishable from the instant case. There, defendant Paradise Grand, a Bahamian hotel, entered into an agency relationship with Sheraton Management, based out of Miami. *Id.* at 4–5. The parties agreed

that Sheraton Management's contacts in Florida should be imputed fully to Paradise Grand due to the agency relationship. *Id.* at 5. Here, for the purpose of this Motion, no such agency relationship has been admitted or established between Herradura and any Florida-based entity. Furthermore, the facts and analysis in *Fraser v. Smith* more appropriately apply to the instant case.

at 304 (no personal jurisdiction where defendant corporation merely entered into an escrow agreement to hold loan notes in Florida following the purchase of stock from a Puerto Rico corporation).

▆▆ Plaintiffs also argue that Herradura's lack of presence in Florida is not dispositive, as Herradura transacts business through subsidiaries, affiliates and/or independent contractors. *See* Pls.' Response at 6–10, citing cases which discuss Fla. Stat. Section 48.181(3) (presumption of substantial business activities). While Plaintiffs are correct in their argument that a local office, agent, meetings and other evidence of physical presence in Florida are not required to find engagement in a business venture pursuant to *Dinsmore,* their conclusory allegations that Herradura has done business in Florida through agents and independent contractors are unavailing. *See* Pls.' Response at 10. "Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there." *Meier ex rel. Meier v. Sun International Hotels, Ltd.,* 288 F.3d 1264, 1272 (11th Cir.2002). However, an exception exists where the subsidiary is solely an agent through which the parent conducts business or the subsidiary's corporate status is only a formality. *Meier,* 288 F.3d at 1272 (court found jurisdiction over defendant Bahama corporation where Florida subsidiaries were created by defendants exclusively to serve their Bahamian hotel business); *see Universal Caribbean v. Bard,* 543 So.2d 447, 448 (Fla. 4th DCA 1989). Doing business through the services of independent contractors may also subject a non-resident defendant to personal jurisdiction under the Florida long-arm statute. *Citizens State Bank v. Winters Gov't Securities*

*Corp.,* 361 So.2d 760, 763 (Fla. 4th DCA 1978), citing *Dinsmore,* 314 So.2d at 564. The Plaintiff bears the burden to persuade the Court that the non-resident defendant conducted substantial business activity through Florida subsidiaries or independent contractors. *See Meier,* 288 F.3d at 1272; *Consolidated Dev. Corp.,* 216 F.3d at 1293–94.

Here, Plaintiffs have not proved that Herradura conducted substantial business activities through subsidiaries or independent contractors. Plaintiffs do not allege that Herradura is a parent of any Florida-based subsidiary, much less that such subsidiary is an agent established for the sole purpose of serving Herradura's ends in Florida. *Cf. Meier,* 288 F.3d at 1272–73 (Florida subsidiary coordinated all advertising and marketing, performed accounting services and managed bank accounts for non-resident parent corporation, among other services); *Universal Caribbean,* 543 So.2d at 448 (jurisdiction found appropriate where Florida company served as the largest booking agent for nonresident resort owner).

Nor have Plaintiffs proved that Herradura conducted continuous or systematic business activities through its affiliates or independent contractors. *Cf. Dinsmore,* 314 So.2d at 564. As discussed, *supra,* the Resort engaged in limited advertising in Florida and occasional procurement of goods through Florida shippers. *Cf. Future Tech. Today, Inc. v. OSF Healthcare Sys.,* 106 F.Supp.2d 1278, 1281 (S.D.Fla. 1999) (a purchase of goods or services benefits the seller, not the buyer). Any activities undertaken in Florida on behalf of the Resort and ultimately for the benefit of Herradura may be considered sporadic, or on an "as needed" basis. The benefit which Herradura might indirectly derive

from the Resort's relationships with Florida advertisers and shippers does not rise to the level required for finding personal jurisdiction in this forum pursuant to Section 48.193(2). *See Fraser,* 594 F.3d at 847; *Meier,* 288 F.3d at 1273–74.

After considering all of Herradura's Florida contacts in aggregation, this Court concludes that they are insufficient to afford jurisdiction in Florida. Due process concerns therefore preclude the exercise of general jurisdiction over Herradura under Florida's long-arm statute.

### 2. Specific Jurisdiction Under Section 48.193(1)(a)

Plaintiffs raise Section 48.193(1)(a) as a basis of jurisdiction against Herradura in their Complaint. *Id.* at ¶ 12(a). However, in their Response, Plaintiffs make no further allegations of Herradura's acts in this forum that directly gave rise to Plaintiffs' injuries and do not contest Herradura's claim of lack of specific jurisdiction.

Section 48.193(1)(a), the specific jurisdiction provision of Florida's long-arm statute, provides:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself ... to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

■ The minimum contacts analysis for specific jurisdiction has three prongs. *Fraser,* 594 F.3d at 850. First, the defen-

dant's contacts must give rise or be related to the plaintiff's cause of action. *Id.* Second, the defendant must have purposefully availed itself of forum benefits through those contacts. *Id.* Third, the defendant's contacts with the forum must be such that it could reasonably anticipate being haled into court there. *Id.; Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 631 (11th Cir.1996). In order to exercise specific jurisdiction over a defendant, the Eleventh Circuit has recently held that it is necessary for the contact to be a "but-for cause of the tort." *Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1222–23 (11th Cir.2009); *Fraser,* 594 F.3d at 850.

■ Upon this Court's review of the record, no evidence exists that any cause of action arose as a consequence of Herradura's acts which Plaintiffs seek to characterize as "operating, conducting, engaging in, or carrying on a business" in Florida. To establish specific jurisdiction under Florida's long-arm statute, more "connexity between the cause of action and the foreign corporation's acts must be alleged." *Kozial v. Bombardier–Rotax GmbH,* 129 Fed.Appx. 543, 546 (11th Cir. 2005); *see also Oldfield,* 558 F.3d at 1223 (no apparent nexus between plaintiff's injury sustained on a fishing trip and the defendant's website being available for viewing in the forum). In the absence of such allegations, this Court finds that Herradura is not subject to specific jurisdiction under Florida's long-arm statute.

### III. ESR's Motion to Dismiss

Similar to Herradura's Motion to Dismiss, ESR argues that (1) this Court lacks personal jurisdiction over it and (2) the balance of relevant factors requires the

dismissal of Plaintiffs' claims in favor of litigation in Costa Rica.[3]

ESR is a holding company, registered under the laws of Delaware and based entirely in Costa Rica on the 1,100 acres that house the Resort and its neighbors. ESR's subsidiaries include Constructora COPT, Limitada, ("Constructora"), developer of the Resort, Guapizul, S.A. ("Guapizul"), operator of the Resort's marina, and Los Suenos Resort Wear ("Resort Wear"), all of which are run from offices located on or next to the Resort. Although each subsidiary performs functions that directly or indirectly promote the Resort, none of the companies ESR owns receive direct funds from the operation of the Resort and golf course. At all times during and since Beverly McLane's injury, ESR has not owned the Resort, the golf course or the marina from which the *Terry Lee* sailed.

ESR claims that Plaintiffs attempt to bootstrap personal jurisdiction over ESR from any jurisdiction which may be found over Marriott. ESR Motion at 7, D.E. 209. As a holding company, ESR does not actively engage in any activity within Florida that could be found to create minimum contacts within the jurisdiction.

Plaintiffs base their argument for personal jurisdiction over ESR on Sections 48.193(2) and 48.181(3) of the Florida long-arm statute, claiming that ESR directly, or through its subsidiaries and affiliates, conducts systematic and continuous business in Florida. Per the deposition testimony of ESR Manager William Royster, ESR assumed and took control over its subsidiaries' assets and liabilities. Royster Dep. at 57, D.E., 235–13. Plaintiffs argue that

this form of control establishes a clear agency relationship between ESR, Constructora, Guapizul and Resort Wear, linking the former to Miami by virtue of the latter's contacts.

Constructora, also managed by Royster, engages in marketing and advertising activity on behalf of the Resort. This activity includes advertisements in fishing, travel and industry magazines, commercials on ESPN2 and sponsorships of various fishing tournaments run by the Resort. Ashley Breeched Dep. at 41, 46, 48, 56–57. At deposition, Ashley Breeched, Constructora's Executive Director of Marketing and Communications, acknowledged that the Resort's advertising likely does reach some viewers in this jurisdiction. Breeched Dep. at 16, 21, 26, 31. Royster is the signatory on several advertising contracts on behalf of Constructora. At first glance, Plaintiffs' characterization of ESR's alleged business contacts in Florida is nearly identical to that alleged against Herradura, discussed *supra*, in Section II. However, the Court notes a few minor distinctions.

■ First, Plaintiffs allege ESR to have a relationship with American Export, a retailer that has offices and storefronts in both Miami and the marina next to the Resort. Breeched Dep. at 30–31. American Export and Los Suenos Marine Supply ("Marine Supply") both lease commercial space from Guapizul. Earl Warren Dep. at 33–34, D.E. 215–5. American Export advertises its partnership with Marine Supply; with American Export claiming it can expediently ship freight from anywhere in the U.S. through its Miami termi-

---

**3.** ESR's argument for dismissal on the basis of *forum non conveniens* is identical to that of co-defendants Herradura and Marriott and will be addressed with Marriott's Motion to Dismiss, **Section IV**, *infra.*

nal. Royster Dep. Ex. 1. According to Earl Warren, sub-manager of Constructora and attorney to both the company and Mr. Royster, Marine Supply and American Export are independently owned and the former has an agreement with Constructora allowing it to use the Los Suenos trade name.[4]

Another distinction is ESR's Interlink P.O. Box in Miami. Breeched Dep. at 36–37; Royster Dep. at 60–63. The P.O. Box allows ESR, its subsidiaries and Royster himself to receive mail from anywhere in the world. Royster Dep. at 61–63. The P.O. Box is listed as on various contracts between Constructora and Florida advertisers as Royster's mailing address. Royster Dep. at 60. As explained by Royster, the need for ESR's Interlink P.O. Box stems from Costa Rica's lack of formalized mail delivery and rudimentary address system. *Id.* at 62. According to Royster, having a mailing address in Costa Rica is prohibitively expensive and impractical. *Id.*

Taking into account the aggregate activities of ESR and its subsidiaries, this Court finds that its contacts with Florida are sporadic and not continuous or systematic such that Florida's long-arm statute would extend *in personam* jurisdiction over ESR for unrelated acts. *See Fraser,* 594 F.3d at 847, 852. Plaintiffs have failed to show how American Export, aside from leasing commercial space from ESR's subsidiary and partnering with an indepen-

dent company (that licenses a trade name owned by ESR), is an agent of ESR or its subsidiaries. The tenuous, if not superficial, relationship between American Export and ESR falls far short of the level necessary to subject ESR to general jurisdiction based on an affiliate or independent contractor's business contacts. *Cf. Dinsmore,* 314 So.2d at 564 (continuous or systematic business activities through its affiliates or independent contractors subject a principle to personal jurisdiction under Section 48.181(3)); *Meier,* 288 F.3d at 1272–73; *Universal Caribbean,* 543 So.2d at 448 (Florida company served as the largest booking agent for non-resident resort owner). Moreover, the Court remains unpersuaded that ESR's Interlink P.O. Box represented an attempt at a "general course of business activity in the state for pecuniary benefit." *April Indus.,* 411 So.2d at 305. The existence of the Interlink P.O. Box in Miami—necessary due to Costa Rica's non-existent mail delivery service—does not conclusively establish a physical presence in this jurisdiction.[5] Thus, the Court declines to give these distinctions significant weight on top of the sporadic and isolated contacts already found to be insufficient for general jurisdiction under Sections 48.193(2) and 48.181(3) in **Section II.B.1,** *supra. See Fraser,* 594 F.3d at 847; *Oldfield,* 558 F.3d at 1220.

As is the case with Herradura (*see* **Section II.B.2,** *supra*), Plaintiffs make no

---

**4.** The "Los Suenos Resort and Marina" is a registered Costa Rica trade name, owned by ESR and licensed through Constructora. Warren Dep. at 35. ESR subsidiaries such as Guapizul are allowed to use the trade name by virtue of their subsidiary status. *Id.*

**5.** Courts that have undertaken the minimum contacts analysis have looked for physical presence within the jurisdiction, *e.g.* offices,

agents, employees, mailing addresses, bank accounts, etc. *See Nippon Credit Bank, Ltd. v. Matthews,* 291 F.3d 738, 745 (11th Cir.2002). The Court notes an apparent lack of factually analogous case law in the Eleventh Circuit—specifically cases in which personal jurisdiction has been found where defendant's only physical presence within the forum is been a mail drop or post office box.

allegations to support the finding of specific jurisdiction over ESR outside of their Complaint and do not contest ESR's claim of lack of specific jurisdiction. *See* Complaint at 16(a); Pls.' Resp. In the absence of such argument and upon review of the record, this Court finds that ESR is not subject to *in personam* jurisdiction under Florida's long-arm statute, Section 48.193(1)(a).

## IV. Marriott's Motion to Dismiss for Forum Non Conveniens

Defendant Marriott provides the Resort with executive support and supervision, a reservation system and a property management system. Marriott Mot. to Dismiss at 7. Marriott moves to dismiss Plaintiffs' Complaint on the basis of *forum non conveniens,* arguing that Costa Rica is an adequate alternative forum for this lawsuit. *Id.* at 2. Herradura and ESR also move to dismiss on this ground.[6]

### A. The Standard for Dismissal under Forum Non Conveniens

Under the doctrine of *forum non conveniens,* even if venue is proper, the district court possesses the discretion to transfer a case to a more convenient forum. *See Baltimore & Ohio R. Co. v.*

*Kepner,* 314 U.S. 44, 57, 62 S.Ct. 6, 86 L.Ed. 28 (1941). Although the trial court must accord deference to a plaintiffs choice of forum, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

To prevail on a motion to dismiss for *forum non conveniens,* the defendant has the burden of establishing that (1) an available and adequate alternative forum exists, (2) the private factors weigh in favor of dismissal,[7] (3) the public factors weigh in favor of dismissal[8] and (4) the plaintiff would not be prejudiced by having to file in the alternative forum. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255–62, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 951 (11th Cir.1997).

First, "the defendant must demonstrate both the availability and the adequacy of the proposed alternative forum." *Tyco Fire v. Hernandez Alcocer,* 218 Fed.Appx. 860, 865 (11th Cir.2007) (internal citation omitted). Generally, a forum is available if defendants are amenable to service of process or the opposing

---

**6.** For the purposes of the *forum non conveniens* discussion, the Defendants' arguments will be grouped under Marriott's Motion to Dismiss.

**7.** The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses and costs of obtaining unwilling witnesses; (3) the probability of a view of the premises, if appropriate to the action; (4) the enforceability of a judgment if obtained; and (5) all other practical problems that make a trial of the case easy, expeditious, and inexpensive. *See In re Air*

*Crash Disaster Near New Orleans, La.,* 821 F.2d 1147 (5th Cir.1987).

**8.** The public interest factors include: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized controversies resolved at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the law governing the action; (4) the avoidance of unnecessary problems in conflicts of law or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *See In re Air Crash,* 821 F.2d at 1147.

party consents to jurisdiction in the alternative forum. *See Piper Aircraft Co.*, 454 U.S. at 242, 102 S.Ct. 252. A forum is generally adequate if it can provide some relief for plaintiff's claims. *See id.* Additionally, a forum is still adequate even if "the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum." *Id.* at 247, 102 S.Ct. 252.

If an available and adequate alternative forum exists, the district court then considers "all relevant factors of private interest, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice." *C.A. La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). These private interest considerations are factors affecting the convenience of the litigants. *See Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. 839.

If the balance of private interests is not clear, the district court must then "determine whether or not factors of public interest tip the balance in favor of a trial in a foreign forum." *La Seguridad*, 707 F.2d at 1307. The public interest factors (*i.e.*, considerations affecting the convenience of the forum) are the administrative difficulties for courts when litigation is not handled at its origin. *See Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. 839.

Finally, the Court must ensure that a plaintiff can reinstate their suit in the alternative forum without undue inconvenience or prejudice. *See Perez–Lang v.*

*Corporacion de Hoteles, S.A.*, 575 F.Supp.2d 1345, 1353 (S.D.Fla.2008).

**B. Discussion**

**1. An Available and Adequate Alternative Forum**

■ The first prong of the analysis is whether Costa Rica constitutes an available and adequate alternative forum for this dispute. Costa Rica is a constitutional democracy with a division of powers similar to the United States. Decl. of Manuel Antonio Gonzalez at 2–3. Costa Rica is a civil law jurisdiction with an impartial court system. Gonzalez Decl. at 4; *see also Proyectos Orchimex de Costa Rica, S.A. v. E.I. du Pont de Nemours & Co.*, 896 F.Supp. 1197, 1201 (M.D.Fla.1997). The civil code recognizes actions for negligence and personal injury. Gonzalez Decl. at 4, *Proyectos Orchimex*, 896 F.Supp. at 1201. Contingency fee arrangements are permitted under the Code of Civil Procedures. Gonzalez Decl. at 4–5; Decl. of Jose P. Mata–Ferreto at 3. According to Plaintiffs' expert, civil trials in Costa Rica are divided into two stages: (1) discovery and adjudication and (2) appeal. Mata–Ferreto Decl. at 1. This process can be lengthy, especially where the amount of damages exceeds the U.S. equivalent $3,400.00 and the absolute right to Costa Rica Supreme Court review is triggered. *Id.* at 2. Evidence in civil trials is primarily presented in written form, with little oral testimony. *Id.* at 1.

Defendants Marriott, Herradura, ESR and other co-Defendants have indicated they are all amenable to service of process in Costa Rica. Marriott Mot. to Dismiss at 19. Furthermore, in their Response, Plaintiffs concede that Defendants have shown Costa Rica is an adequate forum for

this suit.[9] The Court is satisfied that the alternative forum prong of the *forum non conveniens* analysis is satisfied.

## 2. Private Interest Factors

### a. Relative Ease of Access to Sources of Proof

The first consideration is the relative ease of access to sources of proof in Costa Rica as compared to Florida. *Ford v. Brown,* 319 F.3d 1302, 1308 (11th Cir. 2003) ("[p]erhaps the most important 'private interest' of the litigants is access to evidence."). This factor clearly weighs in favor of dismissal. The accident occurred in the waters just off the coast of Costa Rica. Moreover, Defendants assert that the critical witnesses concerning liability reside in Costa Rica; Captain Nunez of the *Terry Lee,* Roberto Campaz Santana ("Campaz," first mate of the *Terry Lee*), Carlos Sojo (head captain of Costa Rica Dreams who had knowledge of the condition of the *Terry Lee*), mechanics at Limon and Puntarenas in Costa Rica (who may have knowledge of the maintenance and repairs made to the *Terry Lee*), William Kirby (dockmaster employed by Guapizul at time of the incident), Eduardo Lazano (assistant dockmaster), Costa Rican doctors, paramedics and nurses at Care Clinic in Costa Rica (who provided first aid and medical care to Plaintiff Beverly McLane) and Costa Rica government officials (who conducted inspections of the *Terry Lee*). *See* Marriott Mot. at 10–18. Defendants also list a plethora of other witnesses based in Costa Rica who will testify regarding the relationship between all Defendants, the circumstances leading up to the charter rental and provide other information surrounding the incident on March 24, 2006. *See id.* Though some of these witnesses are redundant, the Court is convinced that Costa Rica is home to a majority of witnesses on the issue of liability.

Plaintiffs counter with the fact that four eyewitnesses to the incident reside in Florida. *See* Pls.' Witness List at 1–2. Two of the witnesses are Plaintiffs Brad and Beverly McLane. *See id.* Beverly McLane argues that it is absolutely dispositive that she will not be able to attend her own trial should it take place in Costa Rica, submitting an affidavit which states, *inter alia,* that all of her care and treatment has taken place in South Florida. McLane Aff. at 3. Plaintiffs submit no legal authority to support Beverly McLane's contention that her inability to travel should foreclose the *forum non conveniens* analysis. *Cf. Son v. Kerzner Intern. Resorts, Inc.,* 2008 WL 4186979, *8 (S.D.Fla. Sept. 5, 2008) (plaintiff's alleged inability to travel was not a persuasive justification for invalidating a forum selection clause). Nor does Plaintiff submit any affidavits from her medical providers confirming her inability to travel. *See id.* According to Plaintiffs' legal expert, the parties may present evidence in writing and there is no trial by jury. Mata–Ferreto Decl. at 1. The Court is thus satisfied that if Beverly McLane cannot attend part or all of her trial in Costa Rica, Plaintiffs will nonetheless be able to present their case and their access to proof and witnesses only available in Costa Rica will not be impinged.[10]

---

**9.** Neither party has indicated whether a statute of limitations for negligence claims exists in Costa Rica nor whether it would impact Plaintiffs' ability to bring suit there, thus the Court does not consider this issue.

**10.** In *Morse v. Sun International Hotels, Ltd.* the district court also took into consideration whether any special circumstances, such as a compelling reason preventing plaintiff from

"[C]ourts should look to the quality of proposed witnesses rather than their number." *Morse v. Sun International Hotels Ltd.,* 2001 WL 34874967, *3 (S.D.Fla., Feb. 26, 2001) (dismissing case under doctrine *of forum non conveniens* ), citing *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1334 (9th Cir.1984). The crucial issues in this case concern the alleged negligence of the *Terry Lee's* captain and mate, the potentially unsatisfactory condition of the *Terry Lee* and the failure of certain entities to properly maintenance, license, train and/or supervise the *Terry Lee* and its crew. Here, the resolution of all of these issues will determine liability. Because many of the key witnesses on the issue of liability, including two of the most critical (Nunez and Campaz), reside in Costa Rica, the Court finds this factor weighs in favor of dismissal based upon *forum non conveniens,*

#### b. Availability of the Compulsory Process

As previously discussed, a majority of witnesses reside in Costa Rica. In their Complaint, Plaintiffs do not name as defendants Captain Nunez, his mate Campaz or their employer Costa Rica Dreams. It is unsurprising therefore, that Nunez and Campaz failed to show for their depositions in Costa Rica for this case. Marriott Mot. to Dismiss at 21–22 (Defendants contend that both men are unwilling to come to Miami to testify at trial). The most critical witnesses on the issue of liability are not under the control of any defendant in this case and thus cannot be compelled to testify.

"Of all the private interest factors, the relative ability for the forums to compel the attendance of significant unwilling witnesses at trial often is considered the most important factor, because the presentation of live testimony is essential to a fair trial." *Rivas v. Ford Motor Co.,* 2004 WL 1247018, at *9 (M.D.Fla. Apr. 19, 2004) (dismissing case under doctrine of *forum non conveniens* ). Should this case be brought in Costa Rica, Plaintiffs' jurisdictional impediments to name Nuñez, Campaz and Costa Rica Dreams will disappear, allowing Plaintiffs to compel these parties to testify and produce evidence. Even if Nunez, Campaz and other Costa Rica-based witnesses would be willing to testify in Florida, the costs associated with obtaining their testimony (*i.e.,* translation of testimony from Spanish, hotels, travel) through this Court's compulsory process would be significant. *See Callasso v. Morton & Co.,* 324 F.Supp.2d 1320, 1331 (S.D.Fla.2004) (district court granted dismissal based on *forum non conveniens* in favor of Nicaragua, concluding that the likelihood of substantial testimony in Spanish weighed in favor of dismissal).

Although the Plaintiffs contend that if they are unable to make witnesses available for deposition and trial they will continue on without them, this Court is concerned that all parties to this negligence action would be severely handicapped if forced to litigate without these critical third-party witnesses. *See DaRocha v.*

---

returning to the forum where her injury occurred, should prevent dismissal. 2001 WL 34874967, at *6 (S.D.Fla. Feb. 26, 2001). Finding no such compelling reason, the Court found that the balance of private interests strongly favored dismissal. *See id.* (distinguishing Ms. Morse's return to the Bahamas,

site of her boating accident, from other cases in which compelling reasons preventing return existed) (citations omitted). Here, the court is similarly without adequate basis, medical or otherwise, to find that Plaintiffs cannot return to Costa Rica.

*Bell Helicopter Textron, Inc.,* 451 F.Supp.2d 1318, 1324 (S.D.Fla.2006). Accordingly, this factor weighs in favor of dismissal.

#### c. View of the Premises

Defendants contend that a view of the *Terry Lee* is critical to understanding how the accident might have occurred. Marriott Mot. to Dismiss at 30. Defendants also contend that a view of the marina and surrounding premises will shed light on the allegations of whether Costa Rica Dreams was an apparent agent of the Resort, Marriott or any other defendant in this case. A series of photographs and maps, however, may be a sufficient substitute for Defendants' suggested in-person viewing. This Court is not convinced that a viewing is necessary and gives this factor little weight in finding it does not support dismissal.

#### d. Enforceability of a Judgment

Defendants have established that Costa Rican courts are of competent jurisdiction to hear cases arising from acts occurring within the forum. Furthermore, Defendants have established that remedies and precautions exist to secure the assets of a Costa Rican defendant throughout the pendency of an action. *See* Gonzalez Decl. at 14. Once Marriott, the only Defendant based outside of Costa Rica, consents to satisfy any judgment rendered against it in a Costa Rica court, this Court will be satisfied that this factor supports dismissal under *forum non conveniens.*

#### e. All other Practical Problems

Continuing the instant action in Florida will prevent the Defendants from impleading Nuñez, Campaz and Costa Rica Dreams. Due to the fact that Nuñez and Campaz were responsible for the passengers of the *Terry Lee* on March 24, 2006, and Costa Rica dreams was both their employer and the boat owner, the inability to implead these parties is significant. *See Morse,* 2001 WL 34874967, *4 (in a negligence action where plaintiff could not sue the Bahamian driver of a banana boat and other entities directly involved in the underlying controversy, the inability of defendants to implead them weighed in favor of dismissal); *Perez–Lang,* 575 F.Supp.2d at 1352 (same result where Dominican automobile driver could not be implead). In contrast, Costa Rican courts could implead Nuñez, Campaz and Costa Rica Dreams. This Court finds the problems posed by Defendants' inability to implead Nunez, Campaz and Costa Rica Dreams, among others, weigh in favor of holding this trial in Costa Rica. *See id.* at 1352 (prevention of impleader prevents "an easy and expeditious trial in Florida").

Having found that the private interest factors clearly support dismissal pursuant to *forum non conveniens,* the Court next proceeds to an analysis of the public interest factors. *See Chierchia v. Treasure Cay Servs.,* 738 F.Supp. 1386, 1389 (S.D.Fla.1990).

#### 3. Public Interest Factors

#### a. Administrative Difficulties

The first public interest factor takes into account the court congestion and jury duty generated by controversies having little or no relation to the forum. Here, local Plaintiffs are suing mostly foreign defendants over an incident that occurred in Costa Rica. Neither party has made any showing that Costa Rica courts suffer from a congested docket. Mean-

while, the Southern District of Florida has one of the busiest criminal dockets in the country. *See Perez–Lang*, 575 F.Supp.2d at 1352 (a sister court noted that the Southern District's civil docket was current). This Court finds that this factor bears little weight, one way or another, on the *forum non conveniens* analysis.

### b. Local Interest

As previously discussed, this suit is clearly a Costa Rica controversy because the accident occurred in that forum. This Court agrees with Defendants' contention that Costa Rica has a substantial interest in resolving the issues presented by this action, including the safety of boat passengers in a Costa Rican vessel, the licensing, training and supervision of Costa Rican boating crews, the maintenance and operation of Costa Rican sportfishing boats and Costa Rican agency relationships. The resolution of this action will undoubtedly affect the burgeoning tourism industry of Costa Rica.

Plaintiffs' argument that the broad interest of "providing its own citizens with a forum to seek redress for injuries caused by foreign defendants" is unavailing (*see* Pls.' Resp. at 21 (citation omitted)); it glosses over the fact that the immediate events giving rise to Beverly McLane's injury occurred in Costa Rica. Going one step up the chain of events, Brad McLane chartered the *Terry Lee* from Costa Rica Dreams, a Costa Rican company doing business on Costa Rican soil. The cases Plaintiff cites in support of its broad argument are factually distinguishable from the instant case. *Compare with Chan Tse Ming v. Cordis Corp.*, 704 F.Supp. 217, 220 (S.D.Fla.1989) (public interest factors not in favor of dismissal where defendant was a Florida company and Florida was the site of product manufacture, development and testing). Here, the Court finds that the Florida interest is minimal.

### c. Trial in a Forum Familiar With Applicable Law and Conflict–of–Laws

Next the Court addresses the avoidance of unnecessary problems with conflict-of-laws issues and the application of foreign law. If this Court keeps this case through trial, a conflict-of-laws analysis to determine applicable law would be required. Under the "significant relationships test" utilized in Florida, this Court would analyze factors such as where the injury occurred, where the conduct causing the injury occurred and where the relationship of the parties is centered. *See Bishop v. Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla.1980) ("these contacts are to be evaluated according to their relative importance with respect to the particular issue"). Costa Rican law would have to be considered. *See Chierchia*, 738 F.Supp. at 1389–90 (plaintiff was injured in a boating accident in the Bahamas; this Court concluded that Bahamian law would apply under a conflict-of-laws analysis). For this reason, dismissal based on *forum non conveniens* would be proper. *See Sibaja v. Dow Chem. Co.*, 757 F.2d 1215, 1218 n. 5 (11th Cir.1985) (affirming dismissal where the trial court found that it would have been forced "to conduct a complex exercise in comparative law and consider foreign law with which the Court is not familiar and which is in a foreign language").

As alleged in the Complaint, this is an action in diversity. Consistent with the brief conflict-of-laws discussion, a greater than even chance exists that Costa Rica law would govern this action. Consequently, this factor weighs in favor of Costa Rica as the proper forum.

#### d. Unfairness of Imposing Jury Duty in an Unrelated Forum

A South Florida jury would have a minor interest in a litigation stemming from a boating accident in Costa Rica, in which almost all defendants are Costa Rican entities and Costa Rican law would seemingly govern (as discussed *supra*). Therefore, this Court finds that trial in this forum would create an unfair burden to potential jurors by asking them to apply foreign law. *See Morse,* 2001 WL 34874967 at *7. This factor carries little weight in this *Court's forum non conveniens* analysis; yet it still favors dismissal. *See id.*

#### 4. Prejudice of Having to File in Costa Rica

Finally, this Court must determine that Plaintiffs can reinstate their suit in Costa Rica without undue inconvenience or prejudice. This Court accepts Marriott's representation that it, ESR and Herradura will submit to suit in Costa Rica. To avoid any unforeseen issues such as the Costa Rican statute of limitations or rule that the losing party pays the prevailing party's attorney's fees, this Court will require the Defendants to waive any such defenses or rights they might have prior to dismissal. *See Morse,* 2001 WL 34874967 at *8 (granting defendants' motion to dismiss under *forum non conveniens* subject to written waivers submitted by all defendants). Given these stipulations and findings, the Court is not convinced that Plaintiffs would suffer undue prejudice or significant inconvenience in a Costa Rican court.

### V. Conclusion

This Court finds that Defendants Herradura and ESR have established that they are not subject to the general or specific personal jurisdiction of Florida Courts and therefore should be dismissed from this action. Furthermore, the Court finds that Defendants Herradura, ESR and Marriott have established that (1) Costa Rica is an available and adequate alternative forum, (2) the relevant private and public interest factors overwhelmingly support resolution of this dispute in Costa Rica and (3) Plaintiffs can reinstate their suit in Costa Rica without undue inconvenience or prejudice.[11] Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1) Defendant El Sueno Resort, LLC's Motion to Dismiss Plaintiffs' Third Amended Complaint (D.E. 209), filed on July 7, 2009, is **GRANTED.**

2) Defendant Marina De Herradura, SA.'s Motion to Dismiss Plaintiffs' Third Amended Complaint (D.E. 210), filed on July 7, 2009, is **GRANTED.**

3) Defendant Marriott International Inc.'s Motion to Dismiss Plaintiffs' Third Amended Complaint (D.E. 215), filed on July 7, 2009, is **GRANTED,** subject to its filing, on or before May 20, 2010, written stipulations agreeing to:

 a) waive any and all defenses pertaining to statutes of limitation, jurisdiction and venue that it may have in a Costa Rican court;

 b) waive any entitlement to costs and attorney's fees under Costa Rica law should it be the prevailing party; and

 c) consent to the enforcement in the United States of any final judgment entered in Costa Rica.

---

**11.** With Defendants Herradura and ESR dismissed from this action due to lack of personal jurisdiction, Marriott's argument to dismiss based on *forum non conveniens* becomes even more compelling.